## Case No. 14,391.

UNION PAPER-BAG MACH. CO. et al. v. NIXON et al.

[1 Flip. 491; 2 Ban. & A. 244; 9 O. G. 691; 3 Cent. Law J. 223; 1 Cin. Law Bul. 58.] [1]

Circuit Court, S. D. Ohio. March, 1876.

PATENTS—ASSIGNMENT—CONSTRUCTION—MACHINE FOR MAKING PAPER BAGS—SUPPORTING BAR.

1. If an assignee of a patent convey his entire interest to a second assignee, a subsequent

[1] [Reported by William Searcy Flippin, Esq., and by Hubert A. Banning. Esq., and Henry Arden. Esq., and here compiled and reprinted by permission.]

purchaser from the first assignee of a machine covered by the patent, obtains no right to use the machine during either the first named or extended term

2. The right to use in the extended term a machine purchased or made under the patent during the original term. is an incident to the primal right to use it during the original term. Should that fail on account of fraud, the incident falls with it.

3. A claim was for "the use of a supporting bar or its equivalent, around which paper may be formed into a tube, and in connection with which the said paper tube may be reversed, each and the whole substantially as described." *Held*, that the claim may be deemed to include a supporting bar around which the paper may be formed into a tube, and in connection with which the same may be severed without including, as an essential part, the mode by which the bar is supported; and that defendants have not avoided the patent by employing a different mode of supporting the bar, and they will be held as infringers, though the court, misled by the argument, thought (in another suit) that the mode of supporting the bar was an essential feature.

4. The doctrine. that where a patentee describes particular modes as essential to his invention he is confined to them, should not, where the device is complete in itself, be held to apply.

5. The claim also was for "cutting the paper without waste of material in such a form as shall leave suitable projections for the formation of the bottom lap, cr seam. of the bag, and for convenient operation of the bag at the mouth, substantially as described." *Held*, to be a claim for the machine, and sustained by the court.

6. The learning upon licenses and estoppel in such cases discussed.

Final hearing on pleadings and proof. Suit was brought on the patent [No. 17,184] granted Benj. F. Rice, April 28, 1857, and re-issued to Morgan, Whitney & Priest, March 6, 1860 [No. 920], and afterwards assigned to the Union Paper-Bag Company for the extended term. This company conveyed to Chatfield & Woods the exclusive right to use machines in certain western states, Ohio among them. The suit was brought for infringement of the second and fourth claim of the patent. The claims were as follows: 2d. "I also claim the use of a supporting bar, or its equivalent, around which paper may be formed into a tube, and in connection with which the said paper tube may be severed, each and the whole substantially as described. 4th. I also claim cutting the paper, without waste of material, in such a form as shall have suitable projections for the formation of the bottom lap or seam of the bag, and for the convenient opening of the bag at the mouth, substantially as described." In a former suit between the parties [Case No. 14,386], this patent was sustained, and defendants were enjoined under the second claim. The fourth claim was not involved in that suit. The defendants, now seeking to avoid the terms of the second claim as construed by the court, constructed a machine having a floater, over which the paper tube passed, against the ends of which it was severed, the floater being kept in p'ace between friction rollers. The floater did not possess all the four requirements laid down in the former opinion. as necessary accompa-

niments of the bar. On a motion for commitment under the former injunction, the court did not think the question of infringement clear enough to authorize such a step. This suit, was therefore brought. Defendants set up non-infringement as one defense, insisting that the device as used was the subject matter of patent both in this country and England, and therefore a new invention not known as an equivalent for the Rice bar at the date of his patent. That having purchased the machines from Charles Morgan when he owned a right in the original term of the Rice patent, they had the right to use them until they were worn out. It appeared in proof that Morgan originally gave the exclusive right in the west, under the Rice patent, to Nixon, Chatfield & Woods. Nixon afterwards went out of the firm, conveying his rights to Chatfield & Woods. Soon afterwards, Nixon purchased of Morgan the machines sought to be enjoined, and which the defendants were using in Ohio. At the time of this sale to Nixon, Morgan owned an undivided interest in the Rice patent for the original term only. Afterwards he made an agreement for an assignment of the extended term, should the patent be extended. Rice died before the extension, and all rights in it were conveyed to Mrs. Rice, his administratrix, who, on the extensions. conveyed the same to the Union Paper-Bag Company. Two months after the extension, the Union Paper-Bag Company conveyed the exclusive right to use machines in certain western states for the extended term to Chatfield & Woods. Now the defense claimed that, though their assignment during the original term may have been void, Nixon and Morgan both knew the rights of Chatfield & Woods, and that upon the extension Chatfield & Woods' rights stopped, Nixon's revived and became prior to that of Chatfield & Woods: there being two months in which they held no right. The case was argued both on the license and on the question of infringement. It was at first decided for defendants.

Geo. Harding and Hatch & Parkinson, for complainants.

James Moore and Stallo & Kittridge, for defendants.

Before EMMONS. Circuit Judge, and SWING. District Judge.

EMMONS, Circuit Judge. License: Charles Morgan, the assignee of the patent, sold to Nixon the exclusive right to the use of these machines in the state of Ohio. Nixon sold the same right to Chatfield & Woods. After this, Morgan had no right to sell the use of a machine in Ohio at any time. Not during the original term, because he had already transferred that; not during the extended term, because he did not own it. Nor could he sell a single machine with the right to use it until it was worn out after the expiration of the original term, because the assignments

of the patentee to him transferred no such double authority as that of first transferring the exclusive right of the whole state. which would exhaust his whole power of disposition under the assignment, and then, secondly, to flood the country with machines to be used after the expiration of the term, thus defeating the interest of the patentee in the extension. It is not a fair construction of the assignment of a patent that the assignee shall first assign the entire right for a particular territory, and get its whole value from his vendee, and, after having thus received all the benefit he was entitled to under the transfer, sell single machines to be used in the same territory during the extended term. He will in this mode obtain the value of a right never conveyed to him.

It is argued that inasmuch as Morgan himself subsequently, for a short period, owned the extended term, that if he were in court seeking to enjoin Nixon, he would be estopped to say that at the time of the sale he had no right to make it. If this be so, as the present complainants claim the extended term through him, they should also be estopped. There are many fallacies in this argument.

We hold the purchase from Morgan by the defendant of the infringing machine was in fraud of complainants' rights. Such a title, although it might estop Morgan personally, is not one which would work the same consequences against one whom it was intended to defraud.

It will be noticed particularly that the argument we are now considering, does not suppose the defendant to be possessed of a legal title, but only an equitable right growing out of the fact that his vendor subsequently became possessed of the right, which by the assumptions of this argument he pretended to grant, but this principle is applicable only where justice demands it, and to prevent circuity of action; good faith demands the annexation of no such incident to a contract made for the purpose of defrauding others; no action could be maintained by Nixon against Morgan for a failure of his user of the machine until it was worn out after the expiration of the first term. In view of the fact that Nixon had before bought and sold the same right, that Morgan was the assignee only of the patent and had no right to the extended term, we doubt whether any action could be maintained irrespective of fraud. But in view of our conclusion that the contract was actually fraudulent as to third persons, it is clear that no action could be maintained by one particeps criminis against the other. In either view we are clear that no such right, legal or equitable, passed to the defendant. Nixon, as within the decisions authorized him to use it during the original term in such sense as would give him the right to use it during the extended term. The right to use after the expiration of the term is an inci-

dent to the primal rights to use it during the original term; if that fails on the account of fraud, the incident falls with it.

Second claim: In the former printed opinion the head for distending the bag so that it could be severed by an oblique cut was considered "the all important feature of this supporting bar." It treated the word "supported," as referring to that function of the bar which supported and distended for severance the tube; it treated as unimportant and utterly functionless all the other portions of the bar save for the single purpose of sustaining the distending head. So fully was this idea entertained by the court, the presiding judge remarked to defendant's counsel that if a hair or thread possessed the power of support, and either was substituted for the near part of the bar, he would deem it an infringement. He added that he thought the very essence of the invention would be taken if by some novel discovery a power analogous to magnetism could be made to hold it in place in an operative machine

It was, therefore, because the court erroneously assumed, as it was fully authorized to do by the argument and facts before it, that this particular mode was the only one by which the head could be supported, that it was said "the attachment of the bar to the bed of the machine was one of its leading features." The defendant has succeeded in sustaining this head by other means; he demonstrates by experiment that as matter of fact such feature is not essential. He presents a supporting bar around which the tube is formed, and by which it is sustained and extended for an oblique cut precisely in the mode and with the identical functions as those clearly described in the complainants' patent.

The letter of complainants' specifications is followed by the defendant, and the actual history and growth of this identical machine shows that in fact as well as in legal theory the complainants' supporting bar has been the parent of the defendant's device. Nixon bought an operative machine which he had no right to use; he called experts to make numerous substitutions of subordinate parts and was enjoined, they being pronounced mechanical equivalents. He has all the time been running the same machine, and the question is now presented whether the substitution of another mode of sustaining this supporting bar which he borrows from an English patent, is such a substantial alteration of the complainants' device as avoids infringement.

Notwithstanding what was said by the court when the final injunction was ordered under the former bill in reference to that feature of the bar by which it was attached to the bed of the machine, and which constitutes the foundation of so much of the defendant's argument. we now hold, not without some doubt, that the second claim may

be so construed as to include a supporting bar around which paper may be formed into a tube and in connection with which the same may be severed without including, as an essential part of it, the mode by which the bar is suspended or sustained. When so interpreted, the defendant has not only a mechanical equivalent, but that which is identical in all particulars with that of the complainants.

The nomenclature of the first judgment arose from the accidents of the argument, and is misleading. It might be inferred that the all-important head was something different from the supporting bar itself. The whole judgment shows, however, that all which went to form and distend the tube, the part around which the tube was formed and in connection with which it was severed, was treated as the supporting bar within the meaning of the patent, and all the residue or rear portions as a mere form or mode of holding the supporting bar in place. We adopt no new view now. The only embarrassment results from the undue prominence which was given to the mode of suspending the bar; it was then erroneously supposed to be the only mode.

We think this most useful and highly meritorious invention, one which has cheapened one of the most useful productions of commerce, should not, if any liberal reading of the claim can prevent it, be taken by defendant and used without any alteration or addition, without one particle of invention, of even experiment or expense, because the device of another shows him a different mode of sustaining this bar. Before the complainants' invention no one ever thought of making the lap for a bag by the ingenious device of an extended tube and an oblique cut. Especially was it never thought of in connection with a continuous tube by which bags are made more rapidly than we can count.

It seems to us a breaking down of all the protective principles of the patent law to hand over an invention so novel and so useful to one who has done no more to improve or change it than has this defendant.

Pressed as we are for time, we shall make no attempt to distinguish this case from the judgments cited by the learned counsel for the defendants. We have examined them all, and think they warrant us in saying that the essence of the complainants' device having been appropriated by the defendant, he does not escape infringement, as we construe the claim, even though the mode of supporting the bar were so entirely different as to constitute the subject of a patent. We should deem it a different instrumentality for a support only, and not an essential and indivisible portion of the device around which the tube is formed, distended and presented for severance

We have not overlooked the many decisions which hold that where the patentee describes particular modes as essential to his invention, that he is confined to those; but we do not think their principle ought to be applied to a case like this where the device is so capable of being employed in another mode, where it is so complete in itself, and when so used and thus employed all its benefits are wholly secured. And we add, more especially, that where, without such employment, its novel purpose could not be accomplished at all. Not one of the cases have taken from an inventor so meritorious a device by such means.

It is possible we are somewhat influenced by the history of this contest before us; for it was well calculated to warp, and perhaps even to prejudice, the legal judgment. But if an error should be committed, it is better that it should be in an effort to protect meritorious invention rather than to aid in what appears to us to be an attempt to obtain the benefits of this invention without compensation. From these views it follows that the defendant's device infringes the second claim of complainants' patent.

Fourth Claim: This claim has been construed by Judge Blatchford to be a claim for the mechanism by which the paper for the manufacture of the bags is cut as described. Giving it this construction in connection with the construction which we have given to the second claim, it must, therefore, be held that this claim is also infringed by the defendant.